Ferdinand J. Gunther, a/k/a Jerry Gunther, Plaintiff-Appellant-Cross-Respondent,
v.
Bernard J. Tworek, a/k/a B.J. Tworek, a/k/a Bernie Tworek, Defendant-Respondent-Cross-Appellant.
No. 03-3399.
Court of Appeals of Wisconsin.
Opinion Filed: November 9, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 CANE, C.J.
Ferdinand J. Gunther appeals a judgment and order denying him interest on a series of notes executed several decades ago by Bernard J. Tworek. Gunther argues that either (1) the notes are negotiable instruments under WIS. STAT. § 403.104(1)[1] on which interest is payable from the date of issuance at the rate described in the instrument or at the rate in effect at the place and time interest first accrues or (2) the trial court erroneously exercised its discretion by finding interest on the notes was not calculable despite the fact that each note stated an interest rate on its face. Tworek cross-appeals, arguing that the trial court's decision to deny summary judgment was improper, there were no genuine issues of material fact and he was entitled to judgment as a matter of law on the basis "of failure of condition precedent, statute of limitations, failure of consideration, and laches." Tworek also challenges the trial court's refusal to grant him attorney fees and reasonable costs based on his claim that Gunther's action was frivolous. Finally, Tworek asks this court either to strike Gunther's brief for substantial violations of the briefing rules, including failure to cite to the record and to legal authorities, or to dismiss the appeal under WIS. STAT. § 809.83(2).
¶2 Although Gunther raises two issues on appeal, we address only his erroneous exercise of discretion claim. Gunther's argument that the notes at issue are negotiable instruments was not raised at trial. Therefore we decline to consider it here.[2]See Terpstra v. Soiltest, Inc., 63 Wis. 2d 585, 593, 218 N.W.2d 129 (1974). We conclude that the trial court was correct as a matter of law when it found that the interest rate provisions in the promissory notes were ambiguous. We also conclude that the trial court properly exercised its discretion when it turned to extrinsic evidence to clarify that ambiguity. Finally, we conclude there was credible evidence to support the trial court's finding that the extrinsic evidence did not provide a basis for calculating the interest rates. We therefore affirm the trial court in all respects.

BACKGROUND
¶3 The roots of this tangled case stretch back to the late 1970s[3] when Tworek allegedly borrowed $27,000 from Gunther in exchange for signing nine documents, with varying face values, promising to pay Gunther the sums referred to on the notes, plus interest: "after the sale of the Walker Hotel,"[4] "(20) days after the sale of the Walker Hotel," "(20) days after hotel sale," "at ... sale of hotel," or "after sale of hotel." Four of these documents were dated July 10, 1977, the fifth was dated January 4, 1978, the sixth was dated February 10, 1978, the seventh and eighth were dated April 10, 1978, and the ninth was dated April 15, 1978. Despite these dates, however, evidence suggested and the trial court found that the documents were all executed and delivered at one time in 1980.[5] The notes specified interest rates, but those rates differed from note to note as did the terms on which interest was to be paid. Each of the notes ended with a line the parties could have used to describe the security for the note. That line was left blank in every note.
¶4 The relationship between Tworek and Gunther continued over the next three decades. Gunther borrowed money from Tworek, Tworek obtained an interest in a Nevada bar owned by Gunther and Gunther eventually returned to Hayward, Wisconsin, and began to work for Tworek in various capacities, including as a bartender in one of Tworek's properties.
¶5 In February of 1998, the Walker Hotel burned down. Tworek, who still owned the property, collected money from his insurer and the property was subsequently sold. Two years later, Gunther began this action against Tworek. Litigation was complicated by the age of the notes, the destruction of many of Tworek's records in the Walker Hotel fire and the fact that the two men regularly engaged in informal financial transactions with each other. Over a span of years, Gunther and Tworek drew up documents without the help of lawyers and made oral agreements that supplemented, altered and even negated the explicit language and purported functions of those documents.
¶6 In 2002, after a two-day trial, the court found for Gunther in the amount of $27,000. Gunther moved for reconsideration, requesting a supplemental order awarding interest, costs and fees. After a hearing and briefings, the court denied interest because "it was not proved at trial." Although the court did not explicitly address the question of attorney fees, we determine that its silence constituted denial. The court agreed that Gunther was entitled to costs, but offset Gunther's costs with Tworek's costs for "the prior adjournment and witness issues." This appeal and cross-appeal followed.

STANDARD OF REVIEW
¶7 The trial court's decision that interest was not calculable depended on the interpretation of a contract, a question of law subject to independent review. DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶20, 682 N.W.2d 839. Whether a contract is ambiguous is also a question of law we review de novo. Spencer v. Spencer, 140 Wis. 2d 447, 450, 410 N.W.2d 629 (Ct. App. 1987). If ambiguity exists, the intent of the parties is a question of fact, and we will uphold the trial court's factual findings on the issue of intent as long as any credible evidence or reasonable inferences support its findings. See Insurance Co. of N. Am. v. DEC Int'l, Inc., 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998).
¶8 We review summary judgments de novo, using the same methodology as the trial court. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). All reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Grams v. Boss, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980).

DISCUSSION

Whether Interest Should Have Been Awarded
¶9 Gunther first argues that the circuit court acted contrary to law when it denied him interest because the promissory notes in question were "negotiable instruments" whose interest could be determined either facially or according to statutory principles. See WIS. STAT. § 403.112(1) (interest payable from the date of the instrument); see also WIS. STAT. § 403.112(2) (if amount of interest cannot be determined from the description, interest is payable at the rate in effect at the place of payment of the instrument and at the time interest first accrues).
¶10 Gunther's original and amended complaint never raised this issue, however. The original complaint referred only to Gunther's "consideration and security" in the Walker Hotel. The amended complaint described the notes as "a series of contracts" that had been breached. Nor did Gunther claim that the notes were negotiable instruments at the summary judgment motion hearing or the trial.[6] In his brief, Gunther does not attempt to meet his burden of showing that he raised the issue before appeal, arguing simply that interest should be awarded on statutory grounds.
¶11 Because Gunther did not raise the issue at trial, neither the circuit court nor Tworek had the chance to address the merits of the argument that these notes, with their conditional due dates, were "negotiable instruments" under Wisconsin law. We therefore follow our general rule and do not consider issues raised first on appeal. See Terpstra, 63 Wis. 2d at 593.
¶12 Gunther argues in the alternative that the court erroneously exercised its discretion by finding that interest was "not proven" and "incalculable" because the court found the notes valid and, Gunther contends, the notes "speak for themselves." Although the trial court did not elaborate on the reasons for its finding, it clearly treated the interest provisions of the notes as ambiguous contract terms. The question is whether as a matter of law those terms were ambiguous, and, if they were, whether the court erroneously exercised its discretion when it found that what the parties intended with respect to interest, a question of fact, was not determinable.
¶13 We conclude that the interest rates and terms of payment are ambiguous as a matter of law. The notes all stipulated interest rates of either eight percent or nine percent calculated annually. However, four of the notes indicated interest was to be paid annually, while the other five made interest payable at the time of sale. Seven of the notes identified the property to be sold merely as "the hotel," while two named the Walker Hotel as the property whose sale would trigger payment. If these notes were, as their dates indicate, prepared over a period of time, it is impossible to ascertain from their faces what event would trigger payment and whether all the notes refer to the same event. If the notes were, as the trial court found, all executed at the same time in 1980, the interest provisions are equally ambiguous. It is impossible to tell from the terms of the notes whether Gunther and Tworek intended to calculate interest from the time indicated on the faces of the notes, in 1977 and 1978, or from the time the notes were executed. When contractual language is, as it is here, reasonably susceptible of more than one construction, it is ambiguous. Borchardt v. Wilk, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).
¶14 Gunther argues that the court's decision not to grant interest was an "abuse of discretion" because it was unreasonable. However, his pleadings and briefs to the trial court never suggested any method for determining interest rates, and he offered no evidence of the parties' intentions about when calculation should begin. Nor does Gunther's appeal address this gap. Gunther simply reiterates his position that the trial court should have used "simple mathematics" to determine a rate. We disagree.
¶15 The trial court found that all the predated notes were executed and delivered in 1980, that Tworek had never made any payment on the notes and that the terms of the notes relating to interest were ambiguous. To make sense of the ambiguities it found in the notes, the court looked to the long course of dealings between Tworek and Gunther, a course that made it logical to infer that they would engage in transactions whose formal parameters would not reflect the parties' full or true intentions. There was credible evidence to support that inference. Not only did the trial court properly turn to extrinsic evidence in an attempt to determine the parties' intent, it also properly exercised its discretion when it found the evidence of intent too uncertain to clarify the ambiguous terms of the promissory notes.

Whether Summary Judgment Should Have Been Granted 
¶16 On cross-appeal, Tworek argues that the trial court's decision to deny summary judgment was improper, there were no genuine issues of material fact and he was entitled to judgment as a matter of law on the basis "of failure of condition precedent, statute of limitations, failure of consideration, and laches." We disagree.
¶17 Tworek first contends that the trial court erred by looking outside the pleadings, depositions, answers to interrogatories, admissions on file and affidavits when it denied the motion for summary judgment. Tworek insists that because the meaning of sale is unambiguous, and both parties agreed that no sale took place, the court must have exceeded the limits of WIS. STAT. § 802.08(2) to find a genuine issue of material fact. What the court actually found in the motion hearing, however, was that there was a genuine issue of material fact as to whether there was a failure of consideration, and whether "interest is payable annually or when it accrues or when the action accrues." Tworek cannot, in addition, meet his burden of proving there was no genuine issue of material fact by mere assertion. Strasser v. Transtech Mobile Fleet Serv., 2000 WI 87, ¶¶29-30, 236 Wis. 2d 435, 613 N.W.2d 142.
¶18 Based on our examination of the record, the depositions and pleadings of the parties demonstrate disagreement on a number of facts, including when the notes were executed, how they were to be used, whether the Walker Hotel or the interest in Gunther's bar was consideration, and when and how interest would be determined and paid. Those are genuine disagreements of material fact. A reasonable trier of fact could have found, for example, that the notes were executed in 1977 or in 1980, a determination that would surely have affected the outcome of the case. See id., ¶31.
¶19 Tworek's claims about improper methodology and issues of fact are essentially partial articulations of his larger argument that because sale has an unambiguous meaning and because the parties agreed that no sale took place, there was a failure of a condition precedent. Tworek cites case law supporting the proposition that exact conditions precedent must not only be alleged in the complaint, but also be alleged to have been performed or excused. See, e.g., Price v. Ross, 45 Wis. 2d 301, 312, 172 N.W.2d 633 (1969). Tworek also correctly asserts that Gunther does not claim that the Walker Hotel was sold, but rather that the fire which destroyed the Walker Hotel at once "depleted" the consideration and security for the notes and provided Tworek with money to repay his debt.
¶20 However, Ross and the other authorities Tworek cites all deal with contracts in which no duty is created until a condition is met. The promissory notes in this case are quite different. At the time the notes were executed, Tworek borrowed money from Gunther that he agreed to repay. That debt was created regardless of whether the Walker Hotel was sold. The sale of the Walker Hotel was merely an event that identified the time of repayment by linking it to a disposition of property that would provide money to Tworek. The trial court apparently concluded that the "condition precedent" of the notes had been both alleged and fulfilled because Gunther had argued, and it agreed, that the Walker Hotel was no longer in Tworek's possession and that Tworek had been paid for the property.
¶21 Tworek cites Briggs as well to support his argument that the trial court should have looked only at the exact terms of the conditional contract. See Briggs v. Electric Auto-Lite Co., 37 Wis. 2d 275, 280, 155 N.W.2d 32 (1967). More specifically, Tworek wished the court to consider the word "sale" in isolation. From the court's focus on what "sale" indicated in the notes, however, we conclude the court properly sought the meaning of the particular provision in the contract as a whole. See RTE Corp. v. Maryland Cas. Co., 74 Wis. 2d 614, 620, 247 N.W.2d 171 (1976). The trial court thus implicitly found that Gunther alleged that the conditions indicated by the term "sale," possession going out of Tworek's hands and money obtained for property, had been fulfilled. Using standard canons of contract interpretation, the court also implicitly found that, in these notes, the term "sale" indicated an event marked by those conditions. We cannot say, therefore, that as a matter of law there was a failure of condition precedent.
¶22 Tworek also argues that because the statute of limitations absolutely extinguishes a cause of action on contract six years after the cause of action accrues, he is entitled to summary judgment as a matter of law. Tworek's claim is based on the fact that four of the promissory notes say that interest is to be paid annually. A cause of action would have accrued one year after the date of the making of each of those notes, in 1977 and 1978, extinguishing Gunther's claims more than fifteen years before he began this lawsuit. Even if Tworek's argument holds true for those notes whose interest was to be paid "annually," however, it does not apply to those notes that make interest due on the sale of the Walker Hotel. Limitations for those notes either began to run at the time the Walker Hotel burned down, in which case Gunther's claims on five of the notes are not barred, or has not yet begun to run, based on Tworek's argument that no sale has yet occurred. In either case, the trial court did not err as a matter of law by refusing to grant summary judgment on the grounds that the statute of limitations had expired.
¶23 Tworek argues he is entitled to summary judgment based on failure of consideration because "nothing of value passed from Gunther to Tworek in exchange for the notes sued upon." During his deposition, Gunther claimed to have transferred interest in a bar in Nevada to Tworek as consideration. But Tworek insists that Gunther's deposition statement does not provide grounds for denying summary judgment because (1) even if the bar interest was consideration, it was transferred after the notes were executed and; (2) Gunther's claimed oral grant of an interest in real estate as consideration is "invalid by operation of law" under Wisconsin's statute of frauds.
¶24 As the party seeking to avoid the contract, Tworek has the burden of proving failure of consideration. See Jax v. Jax, 73 Wis. 2d 572, 586, 243 N.W.2d 831 (1976). Whether consideration supports a contract is a question of fact and this court will uphold the trial court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); see also NBZ, Inc. v. Pilarski, 185 Wis. 2d 827, 838-39, 520 N.W.2d 93 (Ct. App. 1994). At the summary judgment motion hearing, the trial court indicated that it was denying summary judgment on exactly this ground; whether failure of consideration was an issue of material fact. The court found that some evidence suggested that Gunther and Tworek had a meeting of the minds about the fact that the Walker Hotel was security for the notes, but also found that the parties' ongoing relationship with each other made it difficult to tell exactly what they intended. Because the nature of consideration could not be determined from the face of the notes, which say only that the loans are "for value received," the trial court properly determined there was an issue of material fact, denying Tworek's motion for summary judgment.
¶25 Tworek also contends that he was entitled to summary judgment on the basis of laches. According to Tworek, Gunther waited until after the Walker Hotel burned to bring his claim because he knew that most, if not all, of Tworek's records would have been destroyed in the fire, leaving Tworek with no evidence with which to defend himself.
¶26 Laches is an equitable defense to an action. To successfully assert laches, Tworek must prove not only that Gunther unreasonably delayed bringing his claims, but also he lacked any knowledge that Gunther would assert the right on which the claim was based, and he was prejudiced by the delay. See Sawyer v. Midelfort, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). Fact-intensive equitable defenses are not ordinarily susceptible to resolution on summary judgment. See Becker v. Becker, 66 Wis. 2d 731, 734, 225 N.W.2d 884 (1975). In this case, where the facts are contested, the evidence complex, and the intentions of Tworek and Gunther are critical, we cannot say that Tworek was entitled to summary judgment on the defense of laches.

Other Issues Raised by Tworek
¶27 Tworek also appeals the trial court's refusal to grant him attorney fees and costs on the grounds that Gunther's suit is frivolous. To find an action frivolous under WIS. STAT. § 814.025, the court "must" find it was "commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another" or that the party or the party's attorney "knew, or should have known" that the action was "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." The statute requires the court to make such findings formally. See Sommer v. Carr, 99 Wis. 2d 789, 792-93, 299 N.W.2d 856 (1981). The supreme court has held that while a dismissal of claims without costs to the prevailing party may constitute an implicit finding of non-frivolousness, implicit findings will not satisfy the statutory requirement. See id.
¶28 Here, the trial court did not explicitly find that Gunther's suit was not frivolous nor did it directly address the statutory factors required for such a finding. It did not have to, however. The statute contemplates awarding costs to the successful party only because the fact that a party prevails means that the party's claim had a basis in law and equity and was not pursued in bad faith. WIS. STAT. § 814.025. When it found for Gunther, the trial court thus also found that the statutory criteria for a frivolous claim were unsatisfied.
¶29 Finally Tworek argues that the "Brief of Cross-Respondent," incorporated in the "Combined Reply-Cross-Respondent's Brief" so grossly violates the briefing rules that this court should strike the brief or dismiss Gunther's appeal. Under WIS. STAT. § 809.83(2), failure to comply with briefing rules is ground for a variety of discretionary actions by the court, including striking a paper, dismissing an appeal and imposing costs on a party or counsel. This court will not dismiss an appeal under subsection 2, however, unless a party or the party's attorney demonstrates egregious conduct or bad faith. State v. Smythe, 225 Wis. 2d 456, 469, 592 N.W.2d 628 (1999). Nor will we summarily reverse the trial court on appeal as a sanction without finding bad faith, egregious conduct, or abandonment of appeal. Raz v. Brown, 2003 WI 29, ¶18, 260 Wis. 2d 614, 660 N.W.2d 647.
¶30 In his argument for laches, Tworek accuses Gunther of deliberately delaying the underlying action in this case until after the Walker Hotel fire to make a defense impossible, an accusation that might amount to egregious conduct. However, his reply brief does not directly allege bad faith or egregious conduct on the part of Gunther or his counsel. Thus, we decline to address the possibility of dismissing Gunther's appeal.
¶31 Tworek is correct that the "Brief of Cross-Respondent" cites case law only once and provides no record citations. He is also correct that appellate briefs "must contain" reasons for each section of argument and citations to the authorities, statutes and parts of the record relied on. See WIS. STAT. RULE § 809.19(1)(e). This court has imposed sanctions, including striking a brief, in cases where contentions have been unsupported by authority and contrary to established law, where lack of citation to the record would force the court to search for the evidence that would make a party's argument, and where the tone of a paper demonstrated lack of respect for the tribunal. See, e.g., Mogged v. Mogged, 2000 WI App 39, ¶¶17-24, 233 Wis. 2d 90, 607 N.W.2d 662. However, the Gunther brief does not place that kind of extreme demand on the court. It generally restates the trial court's conclusions, relying primarily on the facts found in the judgment, and revisits in shortened form Gunther's previous arguments. Depending on citations made by others and arguments made in other places may demonstrate carelessness, but in this case it does not rise to the level of a rules violation that requires severe sanction. We therefore decline to strike Gunther's brief.
¶32 Finally, Tworek requests this court to grant him costs under WIS. STAT. RULE § 809.25(1). But while Gunther loses his appeal on whether interest was proven or calculable, all of Tworek's issues on cross-appeal are also dismissed. Because both parties lose their appeals, we will follow our standard practice and deny costs to both.
¶33 The trial court correctly found that the interest provisions of the promissory notes contained ambiguous contract terms and therefore did not erroneously exercise its discretion when it turned to extrinsic evidence to determine the parties' intent. We conclude there was credible evidence to support the trial court's finding that intent could not be determined with enough certainty to clarify the ambiguous terms in the notes. We therefore affirm the judgment and order.
By the Court.  Judgment and order affirmed. No costs on appeals.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Whether the notes Tworek executed were negotiable instruments is a question of law this court would ordinarily review independently. See State v. Perry, 215 Wis. 2d 696, 707-08, 573 N.W.2d 876 (Ct. App. 1997). Appellant has the burden, however, of establishing "by reference to the court record" that an issue "was raised before the circuit court." State v. Caban, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). See infra ¶¶10-11.
[3] The relationship between the two men goes back even farther; according to Gunther's testimony, he first met Tworek in 1956.
[4] The Walker Hotel was apparently a local landmark in Hayward, Wisconsin, Tworek's hometown.
[5] Although a typographical error in the decision ("The notes were made out and post dated to 1987") makes the timeline confusing, the court apparently determined the notes were delivered in early 1980 rather than 1977 because it found the notes were connected to a transaction in which Tworek obtained an interest in Gunther's Nevada bar.
[6] Gunther's reply brief effectively concedes this point by not responding to it. See Reiman Assocs., Inc. v. R/A Adver., Inc., 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (issues not briefed are deemed abandoned).